UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-81003-BLOOM/Valle

CHARLES MEEKS,

    Plaintiff,

v.

OCWEN LOAN SERVICING LLC,

    Defendant.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Ocwen Loan Servicing LLC's ("Defendant") Motion to Dismiss, ECF No. [6] (the "Motion"), seeking dismissal of Plaintiff Charles Meeks's ("Plaintiff") Amended Complaint, ECF No. [1-1]. The Court has carefully reviewed the record, the parties' briefs, and the applicable law. For the reasons that follow, the Motion is granted.

### I. BACKGROUND

Plaintiff initially filed suit in the County Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, seeking relief for Defendant's alleged violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et. seq.* ("RESPA"), and its implementing regulation, 12 C.F.R. § 1024, *et seq.* ("Regulation X"). *See* ECF No. [1-1], Amended Complaint ¶¶ 1-2 ("Amended Complaint"). Specifically, Plaintiff seeks remedies for Defendant's alleged failure to comply with § 2605(k) of RESPA and § 1024.36 of Regulation X. *See id.* ¶ 3. Defendant timely removed the matter to this Court, and now moves to dismiss the Amended Complaint with prejudice. *See* ECF No. [6].

Plaintiff's claim begins with the mailing of a letter. In this case, the letter was a written request for information ("RFI"). *See* Amended Complaint ¶ 14. Plaintiff sent his RFI by certified mail, which he and his counsel tracked through the certified mailing tracking number. *See id.* ¶ 15. Defendant received the RFI by certified mail on November 10, 2015, and that same day, Defendant's agent signed the certified return receipt (the "Certified Receipt" or "Receipt"). *See* ECF No. [1-1], Exh. B ("Certified Receipt"). Plaintiff does not claim that he did not receive the Certified Receipt, and it would appear that he did in fact receive the Receipt, as Plaintiff attached a copy of it to his Complaint. *See id.* On November 19, 2015, nine days after receiving the RFI, Defendant mailed a substantively responsive letter to Plaintiff, addressing Plaintiff's questions. *See* Amended Complaint ¶ 16; *see* ECF No. [1-1], Exh. C ("Response"). Plaintiff does not claim that Defendant provided a deficient Response, but on April 29, 2016, over five months after having received the Response, Plaintiff sent a follow-up Notice of Error ("NOE") to Defendant. *See* Amended Complaint ¶ 17; ECF No. [1-1], Exh. D. In the NOE, Plaintiff, through his attorney, states that "[w]e are unsure as to whether you have received our client's request." ECF No. [1-1], Exh. D. Plaintiff claims that he sent the NOE because he "had not received a written acknowledgement to [his] RFI within the required timeframe." *See* Amended Complaint ¶ 17. Plaintiff does not claim that Defendant failed to adequately respond to the NOE.

Plaintiff brings two counts against Defendant for its alleged violation of 12 U.S.C. § 2605(k). In Count I, Plaintiff alleges that Defendant violated RESPA § 2605(k) through its violation of Regulation X, 12 C.F.R. § 1024.36(c), by failing to acknowledge receipt of the RFI within five days. *See* Amended Complaint ¶¶ 22-23. In Count II, Plaintiff alleges that "[t]hrough its own conduct and the conduct of its designated counsel[,] Defendant has shown a

pattern of disregard to the requirements imposed upon Defendants" by Regulation X.  *Id.* ¶ 34.  As to damages, Plaintiff claims that as a "direct and proximate cause of Defendant's failure to comply with Regulation X and RESPA," Plaintiff has "incurred actual damages in certified postage costs of less than $100.00 for mailing the RFI and NOE, and attorney's fees and costs," which Plaintiff's attorneys accrued in "review of the insufficient response and in drafting the NOE."  *Id.* ¶¶ 28-29.  Plaintiff also claims that he is entitled to statutory damages for Defendant's violation as alleged in Count II.  *See id.* ¶¶ 35-36.  Defendant filed the instant Motion to Dismiss on June 24, 2016.  *See* ECF No. [6]. Plaintiff's Response, and Defendant's Reply, timely followed.  *See* ECF Nos. [13], [14].

## II.   LEGAL STANDARD

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); see *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation").  In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

**III.   DISCUSSION**

Defendant moves the Court to dismiss the Amended Complaint on a number of grounds. First, Defendant argues that Plaintiff has failed to adequately plead the very premise of his claim: that Defendant did not provide written receipt of the RFI within the mandated timeframe. Defendant claims that Exhibit B, attached to Plaintiff's Complaint, shows that Defendant's agent

signed the Certified Receipt on the day Defendant received the RFI, a writing that Defendant claims qualifies as a "written response acknowledging receipt" under Regulation X. *See* ECF No. [6] at 5. Defendant further argues that Plaintiff has not adequately alleged an injury in fact pursuant to the recent Supreme Court *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) *as revised* (May 24, 2016), and that in any event, Plaintiff has not alleged facts sufficient to support a claim for actual or statutory damages under RESPA. *See id.* at 7-13. Defendant moves for dismissal with prejudice due to the aforementioned deficiencies, and because amendment would constitute "an abuse of the RESPA statute." *Id.* at 13. The Court addresses Defendant's arguments in turn.

    **A.**    **Count I – Violation of 12 C.F.R. § 1024.36(c).**

Both parties have urged the Court to review the RFI, NOE, and Certified Receipt attached to the Complaint, and the Court finds the documents central to Plaintiff's claim. Accordingly, the Court will review the attachments as appropriate in adjudicating the Motion. *See Wilchombe*, 555 F.3d at 959; *Maxcess, Inc.*, 433 F.3d at 1340; *Horsley*, 304 F.3d at 1135. Plaintiff claims that Defendant violated RESPA § 2605(k) through its violation of Regulation X. *See* Amended Complaint ¶¶ 22-23. Section 2605 of RESPA governs the "servicing of mortgage loans and administration of escrow accounts," and implicates Regulation X by providing in relevant part that "[a] servicer of a federally related mortgage shall not . . . fail to comply with any other obligation found by the Bureau of Consumer Financial Protection [("BCFP")], by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." *See* 12 U.S.C. § 2605(k)(1)(E). Section 1024.36(c) of Regulation X, under the title "Acknowledgment of receipt," provides that

> Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the information request.

12 C.F.R. § 1024.36(c).

It is undisputed that Defendant received Plaintiff's RFI on November 10, 2015 via certified mail, and that Defendant's agent signed the certified return receipt that same day. *See* Certified Receipt. Plaintiff does not claim that he did not receive the signed Certified Receipt, and Plaintiff received a substantive and timely response to the RFI shortly thereafter. Some five months later, however, Plaintiff's attorneys sent Defendant an NOE, stating that "[w]e are unsure as to whether you have received our client's request." *See* Amended Complaint ¶ 17; *see* ECF No. [1-1], Exh. D. It appears that in actuality, Plaintiff's attorney was not "unsure" of anything, as Plaintiff (through his attorney) concedes that "[t]he NOE here was merely sent to offset certain S.D. Fla. cases that added that extra-statutory burden to do so." ECF No. [13] at 7. So, the question before the Court can be neatly summarized as such: Can a Plaintiff state a claim under RESPA and Regulation X when he and his attorney (1) timely receive a certified return receipt signed by a servicer's agent providing actual notice that an RFI has been received; (2) thereafter, timely receive a substantively responsive answer to that RFI from the servicer as required by RESPA and Regulation X; and then (3) despite having timely received those documents, send an NOE to the servicer many months later falsely questioning the servicer's receipt in order to create a claim for damages? The Court finds that a plaintiff cannot.

Whether Count I of the Complaint must be dismissed turns entirely on whether the Certified Receipt constitutes a "written response acknowledging receipt" within the meaning of 12 C.F.R. § 1024.36(c). Both parties agree that Regulation X does not prescribe the specific form required to acknowledge receipt of an RFI, but a regulation's silence, of course, does not end the inquiry. *See* ECF Nos. [6] at 6; [13] at 4. "The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the

particular dispute. If the statute's meaning is plain and unambiguous, there is no need for further inquiry." *United States v. Silva*, 443 F.3d 795, 797-98 (11th Cir. 2006) (internal quotations omitted). "This is so because '[t]he plain language is presumed to express congressional intent and will control a court's interpretation.'" *Moss v. GreenTree-Al, LLC*, 378 B.R. 655, 658 (S.D. Ala. 2007) (quoting *United States v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002) (alternations in the original). "A court 'should not interpret a statute in a manner inconsistent with the plain language of the statute, unless doing so would lead to an absurd result.'" *Id.* (quoting *Silva*, 443 F.3d at 798). This analysis applies to review of Regulation X, as "'[r]egulations, like statutes, are interpreted according to the cannons of construction.'" *O'Shannessy v. Doll*, 566 F. Supp. 2d 486, 491 (E.D. Va. 2008) (quoting *Black & Decker Corp. v. Comm'r*, 986 F.2d 60, 65 (4th Cir. 1993)). A court appropriately looks to dictionary definitions to ascertain the "plain language" of a regulation. *See Burrage v. United States*, 134 S. Ct. 881, 889 (2014) (describing prior precedent has having relied "on dictionary definitions" to determine the "plain language").

Section 1024.36(c) of Regulation X provides that within five days of receiving an information request like an RFI, a servicer must provide "a written response acknowledging receipt of the information request." 12 C.F.R. § 1024.36(c). Neither party has provided the Court with any authority addressing the specific language of this regulation, and to the Court's knowledge, the specific form required by § 1024.36(c) is an issue of first impression. The Court, therefore, looks to the plain meaning of the regulation. *See Silva*, 443 F.3d at 797-98. Reviewing the language above, the regulation unambiguously requires a servicer to provide, within five days: (1) a response; (2) in writing; that (3) acknowledges "receipt of the information request." Having deciphered the operative requirements of the regulation, the Court turns to

dictionary definitions and persuasive authority to ascertain their meaning. *See Burrage*, 134 S. Ct. at 889.

Webster's Dictionary defines the word "response," in relevant part, as "an act of responding" or "something constituting a reply or a reaction." *Response*, WEBSTER'S DICTIONARY (11th ed. 2012). It then defines the verb "respond" as meaning "to say something in return: to make an answer," or to "react in response." *Respond*, WEBSTER'S DICTIONARY (11th ed. 2012). The Certified Receipt meets this definition, as the Defendant agent's signature on the return receipt serves as both a "reaction" to having received Plaintiff's certified mailing, and a "reply" to that mailing, informing Plaintiff of Defendant's receipt. *See* Certified Receipt; *see also Olsen v. United States*, 1999 WL 250747, at *3 (D. Colo. Feb. 16, 1999) (attached signed receipts for certified mailing "indicat[e] receipt by the IRS"); *Chwarzynski v. United States*, 1993 WL 424245, at *3 (N.D. Ill. Oct. 19, 1993) ("copy of the certified mail receipt indicat[es] delivery to the Attorney General"). As to the definition of "writing," Webster's Dictionary defines the word, in pertinent part, as "written form"; "language or symbols or characters written or imprinted on a surface; readable matter." *Writing*, WEBSTER'S DICTIONARY (11th ed. 2012). The Certified Receipt is unquestionably made "in writing," as Defendant's agent signed the Receipt in her own hand writing, and the Receipt provides a variety of written and visible "language," including a date stamp, reflecting relevant and "readable" information. *See* Certified Receipt; *see also Sprint Spectrum, LP v. City of Jeffersonville Bd. of Zoning Appeals*, 2008 WL 833494, at *4 (S.D. Ind. Mar. 27, 2008) (finding that while a statute "does not include a definition of 'in writing,' . . . giving the words their ordinary and plain meaning," a "checklist" form qualifies).

Finally, the Certified Receipt "acknowledges receipt of the information request," in this case, Plaintiff's RFI. Black's Law Dictionary defines the verb "receipt" to mean: "to acknowledge in writing the receipt of something," while Webster's Dictionary defines the verb as "the act of receiving something." *Receipt*, BLACK'S LAW DICTIONARY (10th ed. 2014); *Receipt*, WEBSTER'S DICTIONARY (11th ed. 2012). Webster's Dictionary then defines "receive" as "[t]o take or acquire." *Receive*, WEBSTER'S DICTIONARY (11th ed. 2012). Although it should go without saying, a central purpose of requiring a signed, return receipt is to convey to the sending party that the recipient has received and acquired the mailing. *See Manzer v. Herman*, 2000 WL 637346, at *2 (D. Neb. Mar. 3, 2000), *report and recommendation adopted*, 2000 WL 852459 (D. Neb. Apr. 12, 2000) (finding that defendant served "federal income tax liabilities by certified mail, and received the return receipt postcard indicating receipt by plaintiff"); *see also Olsen*, 1999 WL 250747, at *3; *Chwarzynski*, 1993 WL 424245, at *3. In this case, the act of signing and returning the Certified Receipt constituted a response that conferred knowledge upon Plaintiff (and his attorney) that Defendant had received the RFI through its agent – knowledge that Plaintiff now claims was deficient by regulation. *See Jones v. Flowers*, 547 U.S. 220, 231 (2006) ("After all, the State knew *ex ante* that it would promptly learn whether its effort to effect notice through certified mail had succeeded."). The only reason that Defendant's agent even had the opportunity to sign and return the Certified Receipt is because Plaintiff took the extra step and incurred additional costs in postage so as to confirm when Defendant received the mailing and to act accordingly if Defendant did not receive said mailing. *See id* at 229 ("We do not think that a person who actually desired to inform a real property owner of an impending tax sale of a house he owns would do nothing when a certified letter sent to the owner is returned unclaimed."). Tellingly, Plaintiff does not argue that he lacked actual knowledge of Defendant's

receipt within the required time period, but simply that, despite having received actual knowledge, the acknowledgment was received in deficient form. The Court disagrees, and finds that under the plain language of the regulation, Defendant's timely, signed, and returned Certified Receipt satisfies the requirement of § 1024.36(c).

The Court recognizes that "RESPA is a consumer protection statute that regulates the real estate settlement process," and that as a "remedial consumer-protection statute . . . RESPA is to be 'construed liberally in order to best serve Congress' intent.'" *Hardy v. Regions Mortgage, Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006) (citing 12 U.S.C. § 2601(a)); *Rawlings v. Dovenmuehle Mortgage, Inc.*, 64 F. Supp. 2d 1156, 1165 (M.D. Ala. 1999) (quoting *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir. 1998)). However, as the Court finds the plain language of the regulation dispositive, it need not delve into Congress's intent. *See Birnholz v. 44 Wall St. Fund, Inc.*, 880 F.2d 335, 341 (11th Cir. 1989), *certified question answered*, 559 So. 2d 1128 (Fla. 1990) ("Thus, the cardinal rule of statutory construction is that '[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.'") (quoting *Streeter v. Sullivan*, 509 So. 2d 268, 271 (Fla. 1987) (quoting *A.R. Douglass, Inc. v. McRainey*, 102 Fla. 1141, 137 So. 157, 159 (1931))). In the interests of completeness, the Court nevertheless notes that the plain language of the regulation requires only a "response" informing the borrower that the servicer is in "receipt of the information." 12 C.F.R. § 1024.36(c). Had Congress intended the written response to acknowledge that "the RFI had begun to be *processed* by the servicer, as opposed to sitting in the mail room," as Plaintiff contends without citation, Congress could have included such language in RESPA, and the BCFP could have included such language in the

regulation. *See* ECF No. [13] at 4. Neither Congress nor the BCFP provided such language in § 1024.36(c), but instead, implemented further requirements at subsection (d), mandating that after acknowledgment, a servicer must process the request and timely provide a substantive response. *See* 12 C.F.R. § 1024.36(d). Accordingly, the Court finds that Congress's intent is expressed by the plain language of the statute and regulation. *See Fisher*, 289 F.3d at 1338; *Moss*, 378 B.R. at 658.

Although RESPA is a remedial statute, the Court need not construe it (or its implementing regulation) so as to create a cause of action where none exists. Plaintiff sent a request for information. Plaintiff received confirmation from Defendant within five days, pursuant to Plaintiff's own certified mailing, that Defendant had received that request. Plaintiff then timely received a substantive response to his request. Five months later, after having received the response Plaintiff desired, Plaintiff's attorney sent a factually incorrect letter to Defendant in an effort to create a federal cause of action. Plaintiff's unsupported argument that the Certified Receipt does not constitute a "written response" within the meaning of § 1024.36(c) is an argument based entirely in semantics that the Court, while forced to entertain, finds unpersuasive. The Certified Receipt conclusively shows that Count I of the Complaint must fail, and it is dismissed with prejudice.

      **B.     Count II – Statutory Damages**

For related reasons, the Court must also dismiss Count II, Plaintiff's "pattern or practice" claim for statutory damages. "The following damages are recoverable under RESPA for a section 2605 violation: '(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.'"

*McLean v. GMAC Mortgage Corp.*, 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009), *aff'd*, 398 F. App'x 467 (11th Cir. 2010) (quoting 12 U.S.C. § 2605(f)(1)). "[D]amages are an essential element in pleading a RESPA claim." *Renfroe v. Nationstar Mortgage, LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016). In *Renfroe*, the Eleventh Circuit recently "observe[d] without ruling on the question, that the use of 'additional'" at § 2605(f)(1) "seems to indicate that a plaintiff cannot recover pattern-or-practice damages in the absence of actual damages." *Id.* at 1247 n.4. Shortly thereafter, the Supreme Court issued its decision in *Spokeo, Inc. v. Robins*, instructing lower courts as to the standing requirements necessary for a claim asserting a statutory violation. As the Supreme Court explained, standing requires a plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc.*, 136 S. Ct. at 1547 (internal citations omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (quotations omitted). As to the "concrete" requirement, the Supreme Court explained that

> A "concrete" injury must be "*de facto*"; that is, it must actually exist. *See* Black's Law Dictionary 479 (9th ed. 2009). When we have used the adjective "concrete," we have meant to convey the usual meaning of the term—"real," and not "abstract." Webster's Third New International Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967). Concreteness, therefore, is quite different from particularization.

*Id.* Importantly, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. Here, and as explained above, Plaintiff has not suffered a concrete injury

12

in fact. Therefore, pursuant to the Eleventh Circuit's persuasive *dicta* in *Renfroe* and the Supreme Court's guidance in *Spokeo*, Plaintiff, in this case, cannot assert a statutory violation.

Moreover, courts have interpreted the term "pattern or practice" in accordance with the usual meaning of the words, suggesting "a standard or routine way of operating." *McLean*, 595 F. Supp. 2d at 1365 (quoting *In re Maxwell*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002)). Failure to respond to one, or even two qualified written requests does not amount to a "pattern or practice." *See id.*; *In re Tomasevic*, 273 B.R. 682 (Bankr. M.D. Fla. 2002). In *Renfroe*, the Eleventh Circuit held that statutory damages may be sufficiently plead where, in addition to the alleged RESPA violation against a plaintiff, the complaint alleges unrelated RESPA violations. *See* 822 F.3d at 1247. While a plaintiff need not plead the "identities of other borrowers, the dates of the letters, and the specifics of their inquiries" to survive dismissal, *Iqbal* and *Twombly* still require that a plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly,* 550 U.S. at 570). In this case, Plaintiff has alleged merely that "[t]hrough its own conduct and the conduct of its designated counsel Defendant has shown a pattern of disregard to the requirements imposed upon Defendants by Federal Reserve Regulation X." Amended Complaint ¶¶ 18, 34. This does not provide sufficient facts to plausibly allege an impermissible "standard or routine way of operating," and Count II is dismissed. *See McLean*, 595 F. Supp. 2d at 1365.

## IV. CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss, **ECF No. [6],** is **GRANTED.** The Complaint is **DISMISSED WITH PREJUDICE.** The CLERK is directed to **CLOSE** this case.

Case No. 16-cv-81003-BLOOM/Valle

**DONE AND ORDERED** in Miami, Florida, this 25th day of July, 2016.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record